IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSEPH OTTIS, as Assignee of the Claims of Globie International, LLC, and GLOBIE INTERNATIONAL, LLC, Through Joseph Ottis, Assignee, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:07CV379 |
| v. | ) ) ) | |
| FISCHER PRICE, a Division of Mattel Inc., MATTEL, INC., MATTEL SALES, CORP., ROBERT NORMILE, an Individual, ROBERT A. ECKERT, an Individual, MOTO CONCEPTS, INC., THE ROCK FOUNDATION, DWAYNE JOHNSON, DOES 1 THROUGH 10, Inclusive, and BOB ROSSI, an Individual, | ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) ) | |

This matter is before the court on defendants Fischer Price, Inc., Mattel, Inc., Mattel Sales Corp. ("collectively, Fischer/Mattel"), Robert  Normile ("Normile"), Robert A. Eckert ("Eckert"), The Rock Foundation ("Foundation"), Dwayne Johnson ("Johnson"), and Does 1 through 10's motion to dismiss, Filing No. 23, and defendants Bob Rossi ("Rossi") and Moto Concepts, Inc.'s ("Moto") motion to dismiss, Filing No. 29.  Defendants Normile, Eckert, the Foundation, Johnson, Rossi, and Moto move to dismiss for lack of personal jurisdiction, arguing that each has no contact with the state of Nebraska.  Defendants Does 1 through 10 move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). They argue that no amount of discovery will reveal the identity of Does 1 through 10. Defendants Fisher/Mattel moves to dismiss Count II of plaintiff's claim of a breach of an implied contract under Rule 12(b)(6).  Defendants argue Rossi is not an agent of

Fischer/Mattel and did not have the authority to enter into an implied contract with the plaintiff on behalf of Fischer/Mattel. They further contend that plaintiff's complaint does not support any factual allegation that would prove the contrary. Defendants Fischer/Mattel have not moved to dismiss based on lack of personal jurisdiction.[1]

This is an action for copyright infringement under federal law pursuant 17 U.S.C. § 102. Jurisdiction is premised on 28 U.S.C. § 1331 (federal question jurisdiction). Plaintiff Joseph Ottis alleges the actions of the defendants improperly infringed his valid copyrights, violated his exclusive rights granted to owners of valid copyrights, and caused injury and damage of an undeterminable amount. Filing No. 3, Complaint ¶¶ 40, 41, 42, 43 and 44. Plaintiff also alleges a breach of an implied contract between himself and defendants Fischer/Mattel and Rossi. *Id*., ¶ 52. Jurisdiction over that claim is premised on 28 U.S.C. § 1367(a) (supplemental jurisdiction).

## I.  Background

Plaintiff is a resident of Nebraska. *Id*. ¶ 3. Mattel, Inc. is a global toy company and headquartered in El Segundo, California. Filing No. 25, Attachment 1, Declaration of Robert Eckert ("Robert Eckert Decl.") at 1. Mattel is in the business of designing, manufacturing, and marketing toys worldwide. *Id*., Robert Eckert Decl. at 2. Mattel is the parent company of Fischer-Price, Inc., headquartered in East Aurora, New York. *Id*. at 3. Robert Eckert is the Chief Executive Officer and Chairman of the Board of Mattel, Inc., and is a resident of the state of California. *Id*. at 1 & 3. He neither travels regularly nor

---

[1]Plaintiff has now submitted a reply brief to defendants' motion to dismiss far in excess of the 20-day response period required by Neb. Civ. R. 7.1(b)(1)(B). The court recommends that plaintiff abide by these rules in the future.

2

conducts any personal business in the state of Nebraska. *Id*. at 7. Robert Normile is General Counsel, Vice President, and Secretary of Mattel Inc., and is a resident of the state of California. *Id*., Attachment 2, Declaration of Robert Normile ("Robert Normile Decl.") at 1 & 2. He is President and Secretary of Mattel Sales Corp., a wholly-owned subsidiary of Mattel, Inc., headquartered in El Segundo, California. *Id*., Robert Normile Decl. at 2. He has never been to Nebraska. *Id*. at 3.

Johnson is a resident of Florida and has been since 1991. *Id*., Attachment 3, Declaration of Dwayne Johnson ("Dwayne Johnson Decl.") at 3. He neither travels regularly nor conducts any personal business in the state of Nebraska. *Id*., Dwayne Johnson Decl. at 5. The Foundation is a nonprofit organization located and organized in Florida. *Id*., Attachment 4, Declaration of Emery Sheer ("Emery Sheer Decl.") at 1. The Foundation provides medical and fitness programs to assist children worldwide. *Id*., Emery Sheer Decl. at 2. The Foundation does not maintain any offices or business or conducts personal business dealings in Nebraska. *Id*. at 3 & 5.

Rossi is a resident of Nevada and is President of Moto. Filing No. 30, Ex. 1, Declaration of Robert Rossi ("Robert Rossi Decl.") at 5 & 6. Moto is a corporation organized and located in Nevada. *Id*., Robert Rossi Decl. at 6. Moto ceased doing business in 2006. *Id*. at 6. Moto was involved in designing, manufacturing, and marketing of toys before it ceased doing business in 2006. *Id*. During the time of its operation, Moto did not do any business and did not conduct any meetings or provide any goods or services in the state of Nebraska. *Id*. at 8. Since 2001, Rossi has been a resident of Nevada. Rossi has not visited Nebraska in over 40 years and does not conduct personal

or professional business dealings with individuals or companies located in Nebraska.  *Id.* at 9.

Plaintiff is the creator of a series of characters, games, scripts, story-lines, and books that are displayed on his Web sites www.MeetThePlanets.com, www.GlobiesWorld.com, and www.StarshipAmerica.com.  Filing No. 3, Complaint ¶ 9. Plaintiff has copyrighted these materials in accordance with 17 U.S.C. § 101.  *Id.*, ¶ 8.  In May 2005, plaintiff met with defendant Rossi of Moto in Las Vegas, Nevada.  Filing No. 30, Ex. 1, Robert Rossi Decl. at 7.  According to plaintiff's complaint, Rossi said he had a relationship with Fischer/Mattel and could get plaintiff ten million dollars for the rights to his characters.  Filing No. 3, Complaint ¶ 11.  At Rossi's request, plaintiff gave Rossi his complete package of characters, games, story lines, scripts, Web sites, toy dolls, sales potential, and projected income figures.  *Id.*  Plaintiff further alleges Rossi presented the package to Fischer/Mattel who made changes to plaintiff's characters, storylines, scripts, and games with the intention of marketing such items as their own and obtaining the royalties and financial benefits resulting from the changes and marketing.  *Id.* ¶ 14.  In August 2007, plaintiff discovered that Fischer/Mattel was marketing a line of characters that were similar to plaintiff's characters as well as identical games and storylines.  *Id.* ¶ 20(e).

## II.  Discussion and Analysis

### A.  Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case showing there is personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The court "views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in

4

the plaintiff's favor." *Id*. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to the jurisdiction of the forum state." *Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008)*, *citing Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)*). The plaintiff's prima facie case "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever, 380 F.3d at 1072* (*quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974)*). Jurisdiction over the defendant must satisfy the requirements of the forum state's long-arm statue and of due process. *Id*. at 1073. Nebraska's long-arm statute allows this court to exercise personal jurisdiction over a person who: (1) transacts any business in the state; (2) contracts to supply services or things in the state; (3) causes tortious injury by an act or omission in the state; and (4) causes tortious injury in the state by an act or omission outside the state if the person regularly does or solicits business in the state. *See* Neb. Rev. Stat. § 25-536 (a)-(d). Since Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the issue is whether the exercise of personal jurisdiction comports with due process. *Id*.; *Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001)*.

Due process requires a defendant to have sufficient minimum contacts with the forum state such that summoning the defendant would not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)*; *Burger King Corp. v. Rudzewicz, 471 U.S. 475 (1985)*. "Minimum contacts must exist at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro, 340 F.3d*

at 562; *Clune v. Alimak Ab*, 233 F.3d 538, 544 n.8 (8th Cir. 2000). The minimum contacts must be such that "the defendant purposely avails itself of the privilege of conducting activities within the forum state and it reasonably anticipates being haled into court there." *Burger King,* 471 U.S. at 475; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch,* 518 F.3d at 586; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984).  "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Id*.  Specific jurisdiction occurs when "the defendant has purposefully directed its activities at residents of the forum state" and litigation results from alleged injuries arising out of or relating to those activities. *Id*. at 586.  The court considers five distinct factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Pecoraro*, 340 F.3d at 562; *Digi-Tel Holdings v. Proteq Telecommunications*, 89 F.3d 519, 522-523 (8th Cir. 1996). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Id*.

A defendant must reasonably anticipate being haled into court in a particular forum where its intentional and allegedly tortious actions were aimed and where the injured party receives the brunt of the injury resulting from the conduct. *Calder v. Jones*, 465 U.S. 783,

789-790 (1984). A defendant must know that its actions could have the potential to cause a devastating impact. *Id.* "Although the defendant's lack of control over the injurious result may weigh against jurisdiction in a negligence action, that lack of control will not bar jurisdiction when an injured party has alleged an intentional tort." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991). Copyright or trademark infringement is a tort. *Dakota Indus.*, 946 F.2d at 1388. The tort of copyright infringement occurs where the owner of the copyright suffers damage. *Id.* This usually occurs when the wrongdoers sell the infringing products in the owner's forum state. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) (holding defendants reasonably should have anticipated being haled into a forum of plaintiff's residence by placing a fan in the stream of commerce, knowing it would be sold in that forum).

### 1. Johnson and the Foundation

Ottis has not established that Johnson and Foundation are subject to the personal jurisdiction of this court. The facts alleged in the plaintiff's complaint do not show that Johnson and the Foundation have sufficient minimum contacts with Nebraska to support an exercise of general jurisdiction or specific jurisdiction over them. The only involvement Johnson and the Foundation have to this case is their general involvement in the promotion of Fischer/Mattel's characters, stories, and games. Filing No. 3, Exhibit N-2. Johnson resides in the state of Florida and the Foundation is incorporated in the state of Florida. Filing No. 25, Dwayne Johnson Decl. at 1 & 2. Johnson has not conducted any past or present personal business dealings in Nebraska and does not travel regularly to Nebraska. *Id.* at 5. The Foundation does not conduct any business dealings, pay taxes, or rent or own any property in Nebraska. *Id.*, Emery Sheer Decl. at 3-5. Based upon these facts,

Johnson and the Foundation have not purposely availed themselves the privilege of conducting activities in Nebraska.  Johnson and the Foundation do not have a continuous and systematic presence in Nebraska falling within the requirements of general jurisdiction.  Plaintiff has submitted nothing in response to Johnson's and the Foundation's showing.

Ottis has not alleged any sufficient facts in his complaint to support any inference that either Johnson or the Foundation were involved in any discussions or activities with Fischer/Mattel that caused the alleged injuries of Ottis in Nebraska.  Ottis alleges no more than that Johnson and the Foundation had knowledge of the infringement as a result of a conversation between Ottis and Johnson's agent.  Filing No. 3, Complaint ¶ 34.  This discussion involved a future investment deal, and it is Ottis' contention that Johnson's agent learned of Ottis' product and Web site.  *Id.*  These actions, even if true, would not state a claim for vicarious liability of infringement.  "The requirements for vicarious liability for copyright infringements are: 1.  The right and ability to supervise the infringing activity; and 2.  An obvious and direct financial interest in the exploitation of copyrighted materials."  *RCA/Ariola Intern, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781 (8th Cir. 1988).

On its face, the complaint shows the actions for Johnson and the Foundation were peripheral at best.  Ottis offers nothing in support of this allegation.  There is no allegation that Johnson and the Foundation purposefully directed injurious activities against Ottis in Nebraska or were vicarious infringers of plaintiff's copyrighted material.  Accordingly, the court finds that Johnson and the Foundation motion to dismiss for lack of personal jurisdiction should be granted.   In addition, based on the facts as set forth herein and the legal standards set forth in Part B, supra, the court also finds that plaintiff has failed to state a claim against these defendants pursuant to Fed. R. Civ. P. 12(b)(6).

8

### 2.  Rossi and Moto

Defendants Rossi and Moto also move to dismiss for lack of personal jurisdiction. In his declaration in support of his motion to dismiss, Rossi declares that the alleged conversation took place in Las Vegas, Nevada.  Filing No. 30, Ex. 1, Robert Rossi Decl. at 7.  Rossi states he has been a resident of Nevada since 2001 and neither travels regularly nor owns any property in Nebraska.  *Id*. at 9.  Moto was a Nevada corporation with its principal place of business in Las Vegas, Nevada.  *Id*. at 6.  Moto did not conduct any business, employ persons, maintain an office, or provide any goods or services in Nebraska.  *Id*. at 8.

The court finds that plaintiff has made a prima facie case establishing specific personal jurisdiction over Rossi and Moto.  Plaintiff alleges that a conversation took place in May 2005 between plaintiff and Rossi.  *Id*., ¶ 11.  At that time, Rossi was the President of Motto, acting on its behalf.  *Id.,* ¶ 12.  Plaintiff alleges Rossi told him he had a personal relationship with Fischer/Mattel and could get plaintiff ten million dollars for the rights to his copyrighted material.  *Id*., ¶ 11.  Plaintiff claims he gave Rossi a package of these materials and changed and marketed the characters jointly with Fischer/Mattel.  *Id*., ¶ 14. Rossi does not deny that he has a past relationship with Fischer/Mattel, where he was employed as the Senior Vice President of Mattel, Inc., before he retired in 2001.  Filing No. 30, Ex. 1, Robert Rossi Decl. at 4 & 5.

The allegations of the complaint, if true, are sufficient to state a claim for vicarious infringement on the part of Rossi and Moto using the *Calder* "effects test." The Seventh Circuit has used a broad application of the "effects test" in *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997).  In that  case, personal jurisdiction can be asserted in a state where

a tortious injury occurred "even if events leading to the injury were put into effect outside its borders." *Id.* at 1202. The Eighth Circuit has adopted a narrower view of the "effects test." *Dakota Indus., 946 F.2d at 1391* ("personal jurisdiction is allowed over a non-resident defendant whose acts 'are performed for the very purpose of having their consequences felt in the forum state'"); *General Elec. Capital Corp. v. Grossman, 991 F.2d 1376 (8th Cir. 1993)* (holding personal jurisdiction in Minnesota was not proper because the focus of the wrongdoing occurred in Canada even though harmful effects were ultimately felt in Minnesota).

As noted, defendants Fischer/Mattel do not challenge personal jurisdiction. To the extent that Fischer/Mattel's contacts with Nebraska are sufficient to establish personal jurisdiction over them, plaintiff's allegations of Rossi's purposeful conduct, in conjunction with Fischer/Mattel's actions, is sufficient to overcome Rossi and Moto's motion to dismiss. Accordingly, the court finds Rossi's and Moto's motion to dismiss for lack or personal jurisdiction should be denied.

### B. Rule 12(b)(6)

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly, 550 U.S.—, — , 127 S. Ct. 1955, 1964 (2007)*. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus, — U.S. —, — , 127 S. Ct. 2197, 2200* (quoting *Bell Atlantic,* 550 U.S. at —, 127 S. Ct. at 1964). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the plaintiff's obligation to provide the

grounds for his entitlement to relief necessitates that the complaint contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 550 U.S. at —,127 S. Ct. at 1964 -65.

When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Id.* at 1965. "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Id.* In other words, "the complaint must plead enough facts to state a claim for relief that is plausible." *Sanderson v. C.I.R.,* 231 F. App'x. 534, 535 (8th Cir. 2007) (not designated for publication). Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *See Bell Atlantic,* — U.S. at —,127 S Ct at 1966; *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). The pleading must contain something more than "a statement of facts that merely creates a suspicion of a cause of action." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, 235 (3d ed. 2004). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Bell Atlantic,* — U.S. at —, 127 S. Ct. at 1966. A court should not dismiss a complaint for failure to state a claim unless it is "beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Sommers Oil Co. v. U.S.,* 241 F.3d 1375, 1378 (2001) (*quoting Hamlet v. U.S.,* 873 F.2d 1414 (Fed. Cir. 1989)).

### 1. Eckert and Normile

Plaintiff has failed to state a claim that Eckert and Normile were direct infringers or contributory infringers in their individual capacities. The complaint only alleges that Eckert and Normile were acting in their representative capacities as CEOs of Fischer/Mattel when they allegedly infringed on plaintiff's copyrights. Filing No. 3, Complaint ¶¶ 28, 31, 32, and 33. Nowhere in the complaint does it claim Eckert and Normile were allegedly infringing as individuals and not as representatives of Fischer/Mattel.

Defendants Fischer/Mattel have not moved to dismiss for lack of personal jurisdiction or for failure to state a claim of copyright infringement. According to the complaint, since Eckert's and Normile's alleged infringing activities were done in their representative capacities for Fischer/Mattel, the court will dismiss Eckert and Normile in their individual capacities from this action. There are simply no allegations in the complaint of wrongdoing against these two defendants in their individual capacities. Accordingly, the court finds Eckert's and Normile's motion to dismiss for failure to state a claim will be granted.

### 2. Fictitious Defendants

A complaint must include all the names of all the parties. Fed. R. Civ. P. 10(a). "There is no federal rule that contemplates the use of fictitious parties in pleadings." *Lundberg v. University of Nebraska*, No. 4:CV95-3448, 1996 WL 883606, at *5 (D. Neb. Nov. 25, 1996). "Federal courts have allowed the naming of such parties." *Id*. Doe defendants can be used in federal court if the action involves a federal question and is not based on diversity of citizenship. *Bair v. Krug*, 853 F.2d 672, 674 n.2 (9th Cir. 1988). "An action may proceed against a party whose name is unknown if the complaint makes

12

allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "If discovery identifies other persons who should be named as defendants, it will be simple enough for plaintiff to add them by amendment, after properly securing leave of court." *Id*. "Dismissal is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985)

Plaintiff has yet to provide a service of summons and complaint on defendants Does 1 through 10. "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate time." Fed. R. Civ. P. 4(j). Plaintiff has failed to file a motion for an extension of time to permit discovery of the identities of Does 1 through 10. Plaintiff has made no showing of good cause for failure to comply with Rule 4(j). If during the discovery process plaintiff finds it needs to amend to add an additional plaintiff, plaintiff can file an appropriate motion. Accordingly, the court will dismiss plaintiff's allegations against Does 1 through 10 without prejudice.

### 3.  Breach of an Implied Contract

Defendants Fischer/Mattel, along with Johnson, the Foundation, Eckert, and Normile, move to dismiss plaintiff's claim of breach of an implied contract with

Fischer/Mattel.[2]  "An implied contract is one that arises from mutual agreement and intent
to promise when the agreement and promise have simply not been expressed in words.
An implied contract arises . . . where the intention of the parties is not expressed but where
circumstances are such as to show a mutual intent to contract." *168th and Dodge, LP v.
Rave Reviews Cinemas, LLC*, 501 F.3d 945, 953 (8th Cir. 2007) (*quoting Turner v. Fehrs
Neb. Tractor & Equip. Co.*, 609 N.W.2d 652, 659 (Neb. 2000)). "The determination of the
parties' intent to make a contract is a question of fact.  Such intent is to be gathered from
objective manifestations such as the conduct of the parties, language used, or acts done
by them, or other pertinent circumstances surrounding the transaction." *Id*. (*quoting Kaiser
v. Millard Lumber, Inc.*, 587 N.W.2d 875, 882 (Neb. 1999)).

        Plaintiff's complaint alleges that defendant Rossi has a personal and business
relationship with Fischer/Mattel and entered into an implied agreement with plaintiff.  Filing
No. 3, Complaint ¶ 20.  The alleged agreement would allow plaintiff to receive profits and
royalties from Fischer/Mattel if he allowed them to market his characters.  *Id*., ¶ 52.  This
meeting between plaintiff and Rossi occurred in Las Vegas, Nevada, in May 2005.  Filing
No. 30, Ex. 1, Robert Rossi Decl. at 7.  Plaintiff claims Rossi could get plaintiff ten million
dollars for the rights dollars for the rights to his characters after plaintiff produced the first
television series.  *Id*., ¶ 11 & 52.  Plaintiff also alleges that he gave Rossi a complete
package of all his documents comprising of his copyrighted characters, Web presence,
scripts, story lines, and games at this meeting.  *Id*., ¶ 11.  Plaintiff further contends he
performed each and every covenant of the agreement he made with Rossi.  *Id*., ¶ 53.

---

        [2]The court has already determined that these defendants will be dismissed on other grounds with the
exception of Fischer/Mattel.

These facts are of relative importance to the issue of whether there was an implied contract between plaintiff and Fischer/Mattel.

Defendants argue that Rossi was acting as a broker and not as an agent or representative for Fischer/Mattel. As a result, defendants assert there could be no implied contract between plaintiff and Fischer/Mattel. The court finds that plaintiff has alleged sufficient facts in the complaint to support a claim of breach of implied contract. The court finds it would be premature for this court to dismiss plaintiff's breach of contract claim at this time. The issue of whether Rossi was acting as an agent or a broker and whether an implied contract exists can best be determined at the summary judgment stage. Accordingly, the court finds defendants' motion to dismiss for failure to state a claim of breach of implied contract is denied.

ACCORDINGLY, IT IS ORDERED:

1. Dwayne Johnson's and The Rock Foundation's motion to dismiss for lack of personal jurisdiction, Filing No. 23, is granted.

2. Robert Eckert's and Robert Normile's motion to dismiss in their individual capacities for failure to state a claim, Filing No. 23, is granted.

3. The motion by Does 1 through 10, Filing No. 23, is granted without prejudice.

4. The motion to dismiss filed by Fischer Price, Mattel, Inc., Mattel Sales Corp., Bob Rossi, and Moto Concepts, Inc., Filing No. 29, is denied.

DATED this 30th day of May, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge